UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | Chapter: 13 |
| STEPHANIE BURGESS, | |
| Debtor. | Case No: 13-36273 gmh |

| | |
|---|---|
| STATE OF WISCONSIN, | Adversary No: 2014- |
| Plaintiff, | |
| v. | |
| STEPHANIE BURGESS, | |
| Defendant. | |

## COMPLAINT

The State of Wisconsin ("the State"), on behalf of its Department of Children and Families ("DCF"), by its attorneys, Attorney General J.B. Van Hollen and Assistant Attorney General F. Mark Bromley, for its complaint alleges:

1.     This Court has jurisdiction under 28 U.S.C. § 1334.

2.     Venue is proper under 28 U.S.C. § 1409.

3.     This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

4.     The State is one of the fifty sovereign states of the United States of America, with its seat of government located in Madison, Dane County, Wisconsin. The State brings this action on behalf of DCF.

F. Mark Bromley, AAG
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Phone: 608/264-6201
Fax: 608/267-8906
bromleyfm@doj.state.wi.us

5. Defendant Stephanie Burgess is the debtor in the above-captioned bankruptcy proceeding.

6. Defendant was a child care provider doing business as Sparkles Child Care Center.

7. DCF is responsible for administration of the Wisconsin Shares Child Care Subsidy Program ("Wisconsin Shares") and is responsible for monitoring integrity of the program under Wis. Stat. § 49.155.

8. At the time a child care authorization is created or changed, the provider receives a Child Care Authorization Information form, which includes the responsibilities of the child care provider. Included among the responsibilities is the requirement to report the actual hours of attendance for each authorized child in care.

9. The Child Care Attendance Report form is used by the provider to report attendance of the children in care. This form lists the requirement to enter the actual hours of attendance and to keep a written record of each child's actual hours of attendance at the child care center.

10. As a child care provider, defendant was required to maintain a written record of the daily hours of attendance of each child in her care, including the actual arrival and departure time of each child, regardless of whether the child has an "enrollment authorization" or an "attendance authorization." These records are referred to as the "sign in/sign out" sheets and must be maintained on site for at least three years after a child's last day of attendance.

11. Providers are required to have sign in/sign out records available at the child care site whenever the county department or a child care administrative agency requests to review them.

12.     Wisconsin Shares only pays for regulated care.  It does not pay for care provided outside of regulation (*i.e.*, care provided outside of regulated hours and/or care provided for more children than a provider's authorization).

13.     Payment to the provider by DCF is based on either paper attendance reports completed by the provider reporting to DCF the daily hours of attendance for each child in their care, or an electronic record of the daily hours of attendance entered by the provider in the Child Care Provider Information ("CCPI") system.  Both methods of reporting attendance for payment require the provider to certify to DCF that all reported information is complete and accurate to the best of their knowledge.  No provider is entitled to payment in the absence of the required certification.

14.     Defendant submitted Child Care Attendance Reports to DCF certifying the actual attendance of children at her day care center.

15.     DCF relied on defendant's attendance reports in reimbursing defendant for child care services.

16.     By letter dated April 16, 2010, DCF issued a Notice of Suspension from the Wisconsin Shares program to defendant by certified and regular mail, based on a reasonable suspicion that defendant violated provisions of the Wisconsin Shares program.  (A copy of the Notice of Suspension from the Wisconsin Shares program is attached and marked as Exhibit A and is incorporated herein by reference.)

17.     Defendant was notified that effective April 17, 2010, DCF suspended all Wisconsin Shares payments to defendant's business due to (1) defendant's failure to provide access to defendant's day care facility during stated hours of operation (2) defendant's prior

licensing citations and (3) defendant's failure to maintain and submit accurate attendance records as required by the Wisconsin Shares program (Exhibit A at 1).

18.    DCF noted a citation issued on March 20, 2008, in which seven children were pre-signed into defendant's facility at 2:00 p.m. however when the licensing specialist left at 2:30 p.m. the children still had not arrived at the center; DCF also noted that it had been unable to verify the actual care of children at defendant's facility on 13 occasions over the last 48 months and DCF had evidence from a former employee that defendant continued to bill the Wisconsin Shares program for six children after they were no longer in care. (Exhibit A at 2 and 3).

19.    Defendant was notified of her appeal rights from the Notice of Suspension, which advised defendant that a written request for an appeal must be sent directly to and received by the Division of Hearings and Appeals no later than 30 days from the date of the letter (Exhibit A at 4).

20.    Defendant appealed the Notice of Suspension from the Wisconsin Shares program dated April 16, 2010.

21.    On August 5, 2010, DCF sent a notice of overpayment to defendant, notifying her of an overpayment in the amount of $19,957.39 for the period July 5, 2009 through December 11, 2009. DCF's review of defendant's attendance records found that defendant's sign in/sign out records did not consistently match the hours billed to DCF. (A copy of the notice of overpayment dated August 5, 2010, is attached and marked as Exhibit B and is incorporated herein by reference).

22.    Defendant was notified of her appeal rights from the notice of overpayment which advised defendant that a written request for an appeal must be sent directly to and received by

the Division of Hearings and Appeals no later than 30 days from the date of the letter (*see* Exhibit A at 2).

23. Defendant appealed the notice of overpayment dated August 5, 2010.

24. On December 23, 2010, DCF sent an amended notice of overpayment to defendant notifying her of an overpayment in the amount of $17,577.39 for the period July 5, 2009 through December 12, 2009. DCF performed a subsequent audit and recalculation of defendant's attendance records compared to defendant's billing records and arrived at the amended overpayment amount. (A copy of the notice of overpayment dated December 23, 2010, is attached and marked as Exhibit C and is incorporated herein by reference).

25. Defendant was notified of her appeal rights from the amended notice of overpayment which advised defendant that a written request for an appeal must be sent directly to and received by the Division of Hearings and Appeals no later than 30 days from the date of the letter (*see* Exhibit C at 2).

26. On April 6, 2011, the Division of Hearings and Appeals dismissed defendant's petition for review of the suspension from the Wisconsin Share program and overpayment notice. (A copy of the decision of the Division of Hearings and Appeals is attached as Exhibit D, and incorporated herein by reference.)

27. DHA found that DCF's witnesses and exhibits clearly established that defendant had violated the requirement to maintain accurate attendance records and DCF established that defendant had submitted inaccurate claims for payment on numerous occasions in the period of July – December 2009 (Exhibit D at 3 and 4)

28.  Defendant's billing for more hours than children actually attended and/or billing for children who did not attend her daycare at all constitutes an obligation by defendant for money obtained by false pretenses and false representation.

29.  DCF withheld a payment to defendant in the amount of $2,617.25, which reduced the balance to $14,960.14, and payments were made in the amount of $1,310.20, leaving a balance due of $13,649.94 (the "Obligation").

WHEREFORE, the State requests that the Court enter an order determining that the State's claim of $13,649.94 is non dischargeable, pursuant to 11 U.S.C. § 523(a)(2)(A).

Dated this _13th_ day of March, 2014

J.B. VAN HOLLEN
Attorney General

F. MARK BROMLEY
Assistant Attorney General
State Bar #1018353

Attorneys for State of Wisconsin



201 East Washington Avenue
P.O. Box 8916
Madison, WI 53708-8916

Jim Doyle
Governor

Reggie Bicha
Secretary

Henry Wilde
Deputy Secretary

Fax: 608-267-2200
dcf.wisconsin.gov

**State of Wisconsin**
**Department of Children and Families**
Division of Early Care and Education
Bureau of Early Childhood Education

Laura Saterfield
Director

<u>**SENT VIA CERTIFIED and REGULAR U.S. MAIL**</u>
Article No. 7002 0510 0004 2771 1021

April 16, 2010

Stephanie Burgess
3936 N 53Rd St
Milwaukee WI 53216

Re:     Sparkles
        Provider # 0000576930
        Suspension from the Wisconsin SHARES Program

The Wisconsin Department of Children and Families is responsible for statewide administration of the Wisconsin Shares child care subsidy program and is responsible for the monitoring of program integrity of the program under *§49.155, Wisconsin Statutes*.

Effective 4/17/2010, the Department of Children and Families suspended all Wisconsin Shares payments to your business based on a reasonable suspicion that you have violated provisions of the Wisconsin Shares program.  The suspension was based upon your 1) failure to provide access to the day care facility during your stated hours of operation; 2) prior licensing citations; and 3) failure to maintain and submit accurate attendance records as required by the Shares program

*Pursuant to §49.155(7)(a), Wisconsin Statutes, REFUSAL TO PAY CHILD CARE PROVIDERS. The department or the county department under s. 46.215, 46.22 or 46.23 may refuse to pay a child care provider for child care provided under this section if any of the following applies to the child care provider, employee or person living on the premises where child care is provided:*

1. *The person has been convicted of a felony or misdemeanor that the department or county department determines substantially relates to the care of children or to the operation of a business.*
2. *The person is the subject of a pending criminal charge that the department or county department determines substantially relates to the care of children.*
3. *The person has been determined under s. 48.981 to have abused or neglected a child.*
4. *The department or county department reasonably suspects that the person has violated any provision under the program under this section or any rule promulgated under this section.*



Specifically, it has been determined that you are in violation of:

- The Department of Children and Families' Southeast Regional Licensing Office issued a citation(s) for violating the following administrative rule(s) on the following date(s).
  - *DCF 250.04(6)(b) formerly DHS 45.04(6)(b) The licensee shall maintain a current, accurate written record of the daily attendance on a form prescribed by the department that includes the actual time of arrival and departure for each child for the length of time the child is enrolled in the program.*
    - Citation issued by Department on 3/20/2008 where the Department found "the daily attendance for 3/20/2008 is not accurate. Seven children are pre-signed into the center at 2:00 PM. However, when the licensing specialist left the facility at 2:30 PM the children still had not arrived at the center." You created a corrective action plan to remedy the citation where you stated "I will revise my method of saving time/pwk. I will only copy the childrens names/birthdays and I will write down the time. Children only arrive from school when I pick them up."
- *DCF 201.04(6)(e) authorizes the department or child care administrative agency to make on-site inspections to monitor provision of authorized services.*
  - The Department has been unable to verify the actual care of children by your facility on 13 occasions over the last 48 months. The Department attempted to visit your facility on the following dates and was unsuccessful in gaining access to the facility:
    - 4/5/2006
    - 4/11/2006
    - 2/20/2008 at 9:15am
    - 2/20/2008 at 11:15am
    - 4/1/2008
    - 4/9/2008
    - 11/20/2008 at 2:45pm
    - 11/24/2008 at 4:15pm
    - 4/13/2009
    - 6/8/2009 at 3:50pm
    - 7/1/2009 at 3:15pm
    - 12/17/2009
  - The Department was able to successfully gain access on 10/26/2009 at 4:00pm, however there were no children present during the Department's visit. According to your billing records your second shift employee and her six children should have been present at the time of the Department's visit as you billed the Wisconsin Shares program 34 of the maximum 35 authorized hours during this week for the six children, however no children were present.
  - On the Department's no access visit on 7/1/2009 at 3:15pm, you billed the Wisconsin Shares program 35 of the maximum 35 authorized hours during this week for the six children, however no children were present.

- o The Department issued a warning letter to you on 6/16/2009 citing the Department's prior attempts to gain access to your facility and the resulting non-compliance on your part by failing to provide access to the Department. Subsequent onsite visits were performed by the Department and again the Department was unable to obtain access on two more occasions and was able to gain access on one occasion, however did not observe any children in attendance.
- o The prior warning and continual unsuccessful attempt(s) to verify the presence of children attending the facility raises a strong and reasonable suspicion that the provider is billing the Wisconsin Shares program for children that do not actually attend.

- *DCF 250.04(6)(b) The licensee shall maintain a current, accurate written record of the daily attendance on a form prescribed by the department that includes the actual time of arrival and departure for each child for the length of time the child is enrolled in the program.*

- *DCF Wisconsin Shares Child Care Assistance Manual 2.2.2: Agencies and the State have the authority to pursue any entity in a civil or criminal action, which receives funds to which it is not entitled. Some examples of fraud are:*
  - o *The provider knowingly reported hours of attendance greater than the actual hours of attendance in order to receive a higher payment*
  - o *The provider reported the child in attendance at their authorized location when the child was elsewhere.*
  - o *The provider knowingly neglected to report when a child was no longer in care in order to continue receiving payment for that child.*

Contrary to DCF 250.04(6)(b) and 2.2.2, the Department has evidence from a former employee that you continued to bill the Wisconsin Shares program for six children after they were no longer in your care. The former employee states that after her employment ended on 12/18/2009, her children stopped attending your day care at the same time. However, you continued to bill as if the children were in attendance for the following four weeks until the six authorizations were ended.

Pursuant to Wisconsin Administrative Code DCF 201.07(1), you have the right to appeal this decision. Your written request for an appeal must be sent directly to and received by the Division of Hearings and Appeals no later than thirty (30) days from the date of this letter; include a copy of this letter with your appeal. Send all appeals to:

Division of Hearings and Appeals
5005 University Avenue, Suite 201
P.O Box 7875
Madison, WI 53707-7875

Sincerely,


Jim Bates, Section Chief
Fraud Detection and Investigation Unit
Bureau of Early Childhood Education

Provider Investigation Unit
Milwaukee Early Care Administration


cc:    Laura Saterfield, Bureau Director, DCF/DECE/Bureau of Early Childhood Education
       Lisa Patrick, Executive Director, DCF/DECE/Milwaukee Early Care Administration
       Nancy Wettersten, Attorney, DCF
       Cinda Stricker, Regional Licensing Chief

201 East Washington Avenue
P.O. Box 8916
Madison, WI 53708-8916



Jim Doyle
Governor

Reggie Bicha
Secretary

Henry Wilde
Deputy Secretary

Fax: 608-267-2200
dcf.wisconsin.gov

**State of Wisconsin**
**Department of Children and Families**
**Division of Early Care and Education**
**Bureau of Early Childhood Education**

Laura Saterfield
Director

August 5, 2010

Stephanie Burgess
3936 N 53Rd St
Milwaukee WI 53216

Re:  Sparkles
     Provider # 0000576930

The Wisconsin Department of Children and Families is responsible for statewide administration of the Wisconsin Shares child care subsidy program and is responsible for the monitoring of program integrity of the program under s. 49.155, Wisconsin Statutes.

As the State Child Care Administrative Agency, we continuously monitor Wisconsin Share providers to ensure that they adhere to Wisconsin Shares Child Care Subsidy regulations.

On April 17, 2010 your Wisconsin Shares payments were suspended. As part of the follow up to the suspension, your attendance records were reviewed by the Department. Following an initial review of your attendance records, it has been determined that you are in violation of DCF 201.04(5)(c) which requires providers to submit accurate attendance.

After reviewing your attendance records it was found that your sign in/sign out records did not consistently match the hours billed to Wisconsin Shares.

According to the Child Care Attendance Report that you submitted for reimbursement, you certified that all reported information is complete and accurate to the best of your knowledge. Specifically, you stated that you "understand that I must enter the actual hours of attendance for each child in care on each Child Care Attendance Report form, even if the authorization is based on enrollment."

Also, as stated in Sharing the News, Volume 1, Issue 1, November 2006, on page one, "The attendance that you report to the Wisconsin Shares Program is a claim for payment and must accurately show the hours of regulated child care that you provided to each Wisconsin Shares subsidized child in the attendance period."

Pursuant to the Wisconsin Shares Child Care Assistance Manual, Chapter 2, Section 2.2.2, Agencies and the State have the authority to pursue any entity in a civil or criminal action, which receives funds to which it is not entitled. Agencies are required by Wisconsin Administrative Rule (DCF 201.04(5)(b) to take all reasonable steps necessary to recoup or recover from a provider any overpayments made for child care services.

B

The Department of Children and Families is giving notice to the provider, Sparkles that you are in violation of the Wisconsin Shares Child Care Subsidy Program regulations for receiving payment for care that you did not provide as reported. Therefore, we will proceed with a recovery in the amount of $19,957.39 for the period 07/05/2009 through 12/11/2009. Please note that depending on the results of any remaining attendance reviews, additional overpayments may be found resulting in additional recovery attempts.

To make arrangements to begin repaying the overpayment, please contact:

> Sherry Colstad
> DCF MECA Bureau of Finance
> (608) 267-0442

Pursuant to Wisconsin Administrative Code DCF 201.07(1), you have the right to appeal this decision. Your written request for an appeal must be sent directly to and received by the Division of Hearings and Appeals no later than thirty (30) days from the date of this letter; include a copy of this letter with your appeal. Send all appeals to:

> Division of Hearings and Appeals
> 5005 University Avenue, Suite 201
> P.O Box 7875
> Madison, WI 53707-7875

Sincerely,

Jim Bates, Section Chief
Fraud Detection and Investigation Unit
Bureau of Early Childhood Education

Provider Investigation Unit
Milwaukee Early Care Administration


cc:   Laura Saterfield, Bureau Director, DCF/DECE/Bureau of Early Childhood Education
      Nancy Wettersten, Attorney, DCF
      Nicole Bjork, Attorney, DCF
      Eric Volkmann, Attorney, DCF
      Cinda Stricker, Regional Licensing Chief

201 East Washington Avenue
P.O. Box 8916
Madison, WI 53708-8916

Jim Doyle
Governor

Reggie Bicha
Secretary

Ron Hunt
Deputy Secretary

Fax: 608-267-2200
dcf.wisconsin.gov



**State of Wisconsin**

**Department of Children and Families**
Division of Early Care and Education
Bureau of Child Care Administration

Angela Russell
Division Administrator

Jim Bates
Bureau Director

December 23, 2010

Stephanie Burgess
3936 N 53Rd St
Milwaukee WI 53216

Re:     Sparkles
        Provider # 0000576930

The Wisconsin Department of Children and Families is responsible for statewide administration
of the Wisconsin Shares child care subsidy program and is responsible for the monitoring of
program integrity of the program under s. 49.155, Wisconsin Statutes.

As the State Child Care Administrative Agency, we continuously monitor Wisconsin Share
providers to ensure that they adhere to Wisconsin Shares Child Care Subsidy regulations.

On April 17, 2010, your Wisconsin Shares payments were suspended. As part of the follow up
to the suspension, your attendance records were reviewed by the Department. Following an
initial review of your attendance records, it has been determined that you are in violation of DCF
201.04(5)(c) which requires providers to submit accurate attendance.

After reviewing your attendance records it was found that your sign in/sign out records did not
consistently match the hours billed to Wisconsin Shares.

According to the Child Care Attendance Report that you submitted for reimbursement, you
certified that all reported information is complete and accurate to the best of your knowledge.
Specifically, you stated that you "understand that I must enter the actual hours of attendance for
each child in care on each Child Care Attendance Report form, even if the authorization is based
on enrollment."

As stated in Sharing the News, Volume 1, Issue 1, November 2006, on page one, "The
attendance that you report to the Wisconsin Shares Program is a claim for payment and must
accurately show the hours of regulated child care that you provided to each Wisconsin Shares
subsidized child in the attendance period." Also, as stated in Sharing the News, Volume 3, Issue
3, July 2009, Special Edition, on page two, "*49.155(6m)(a), Wis. Stats.* Maintain a written record
of the daily hours of attendance of each child for whom the provider is providing care under this
section [Wisconsin Shares], including the actual arrival and departure times for each child."

Pursuant to the Wisconsin Shares Child Care Assistance Manual, Chapter 2, Section 2.2.2, Agencies and the State have the authority to pursue any entity in a civil or criminal action, which receives funds to which it is not entitled. Agencies are required by Wisconsin Administrative Rule (DCF 201.04(5)(b) to take all reasonable steps necessary to recoup or recover from a provider any overpayments made for child care services.

The Department of Children and Families is giving notice to the provider, Sparkles that you are in violation of the Wisconsin Shares Child Care Subsidy Program regulations for receiving payment for care that you did not provide as reported.

The Department of Children and Families initially established an overpayment on August 5, 2010 for the period 07/05/2009 through 12/12/2009, where the State determined you were overpaid $19,957.39. Upon further review, the Department has performed a subsequent audit and recalculation of your attendance records compared with your billing records from the period 07/05/2009 through 12/12/2009, you were overpaid $17,577.39. Therefore the amended overpayment has been reduced from $19,957.39 to $17,577.39.

To make payments please contact the Public Assistance Collections Unit at:

1-800-943-9499

Pursuant to Wisconsin Administrative Code DCF 201.07(1), you have the right to appeal this decision. Your written request for an appeal must be sent directly to and received by the Division of Hearings and Appeals no later than thirty (30) days from the date of this letter; include a copy of this letter with your appeal. Send all appeals to:

Division of Hearings and Appeals
5005 University Avenue, Suite 201
P.O Box 7875
Madison, WI 53707-7875

Sincerely,


Erik Hayko, Section Chief
Fraud Detection and Investigation Unit


cc:    Jim Bates, Director, Bureau of Child Care Administration
       Sarah Henery, Attorney, DCF
       Nicole Bjork, Attorney, DCF
       Cinda Stricker, Regional Licensing Chief
       Fay Simonini, Public Assistance Collections Unit



**State of Wisconsin\DIVISION OF HEARINGS AND APPEALS**

David H. Schwarz, Administrator
5005 University Avenue, Suite 201
P.O. Box 7875
Madison, Wisconsin 53707-7875

Telephone: (608) 266-7709
FAX: (608) 264-9885
E-mail: DHAMail@wisconsin.gov
Internet: http://dha.state.wi.us

RECEIVED

MAY 0 5 2011

May 4, 2011

Stephanie Burgess
3936 North 53rd Street
Milwaukee, WI 53218

Attorney Scott Sussman
Department of Children and Families
Office of Legal Counsel
201 East Washington Avenue, 2nd Floor
Madison, WI 53703

Re:     Sparkles Child Care Center
        Case Nos. ML-10-0208 and ML-10-0377

Dear Parties:

Enclosed please find a copy of the Decision issued by the Department of Children and Families in the above-captioned matter.

Sincerely,

*Kenneth D. Duren/Om*

Kenneth D. Duren
Administrative Law Judge

KDD:lam
Enclosure

c:     James Bates, Department of Children and Families





# STATE OF WISCONSIN
## Department of Children and Families

In the Matter of

Sparkles Child Care Center

DECISION

ML-10-0208 and ML-10-0377

The proposed decision of the Administrative Law Judge dated April 6, 2011, is hereby adopted as the final order of the Department.

## REQUEST FOR A REHEARING

This is a final fair hearing decision. If you think this decision is based on a serious mistake in the facts or the law, you may request a rehearing. You may also ask for a rehearing if you have found new evidence which would change the decision. To ask for a new hearing, send a written request to the Division of Hearings and Appeals, P.O. Box 7875, Madison, WI 53707-7875.

Send a copy of your request to the other people named in this decision as "PARTIES IN INTEREST" in the proposed decision. Your request must explain what mistake the Administrative Law Judge made and why it is important or you must describe your new evidence and tell why you did not have it at your first hearing. If you do not explain these things, your request will have to be denied.

Your request for a new hearing must be received no later than 20 days after the date of this decision. Late requests cannot be granted. The process for asking for a rehearing is in Wis. Stat. § 227.49. A copy of the statutes can be found at your local library or courthouse.

## APPEAL TO COURT

You may also appeal this decision to Circuit Court in the county where you live. Appeals must be filed no more than 30 days after the date of this hearing decision (or 30 days after a denial of a rehearing, if you ask for one). The process for Circuit Court appeals is in Wis. Stat. §§ 227.52 and 227.53.

You must also serve your appeal either personally or by certified mail on the Respondent, Department of Children and Families, 201 East Washington Avenue, 2nd Floor, Madison, Wisconsin, 53703..

The appeal must also be served on the other "PARTIES IN INTEREST" named in the proposed decision.

Given under my hand at the City of
Madison, Wisconsin, this _4th_ day of
_May_ , 2011.

MaryAnn Lippert
Executive Assistant
Department of Children and Families

# STATE OF WISCONSIN
## Division of Hearings and Appeals

| In the Matter of | |
|---|---|
| | PROPOSED |
| Sparkles Child Care | DECISION |
| | |
| | ML-10-0208 |
| | & |
| | ML-10-0377 |

The petitioner, a family child care licensee doing business in Wisconsin, filed a hearing request with the Division of Hearings & Appeals on April 26, 2010, in ML-10-0208, contesting a decision by the Wisconsin Department of Children and Families taken on April 16, 2010, to suspend payments of Wisconsin Shares reimbursements to her facility. On September 7, 2010, the petitioner filed a second hearing request, in ML-10-0377, with the Division of Hearings & Appeals contesting a decision of the Department of Children and Families finding that she had been overpaid $19,957.39 in WI Shares payments. On December 23, 2010, the Department modified and amended the overpayment determination, reducing it to a total of $17,557.39 of overpaid WI Shares reimbursements. The jurisdictional basis for both appeals is found at Wis. Admin. Code §DCF 201.07(1); see also, Wis. Stat. § 227.42, et. seq. A hearing was held on March 25, 2011, at Milwaukee, Wisconsin. A hearing set for August 2, 2010, was rescheduled at the petitioner's request. A hearing set for September 27, 2010, was rescheduled at the joint request of the parties (to accommodate consolidation of the two appeal files). A hearing set for November 18, 2010, was rescheduled at the respondent's request.

The issues for determination are: (1) **Whether the Department correctly suspended the petitioner's WI Shares payments due to a reasonable suspicion that program violations had occurred; (2) Whether the Department correctly determined that the petitioner had been overpaid $17,577.39 in WI Shares reimbursements in the period of July 5 – December 12, 2009, due to overbilling.**

There appeared at that time and place, the following persons:
PARTIES IN INTEREST:

       Petitioner:
       Sparkles Child Care Center
       BY:    Stephanie Burgess
             3936 N. 53rd Street
             Milwaukee, WI 53216

       Respondent:
       Department of Children and Families
       BY:    Attorney Scott Sussman
             Office of Legal Counsel
             201 E. Washington Avenue, 2nd Floor
             Madison, WI 53708-8916

       Administrative Law Judge:
             Kenneth D. Duren, Attorney
             Division of Hearings and Appeals

## FINDINGS OF FACT

1. Sparkles Child Care Center is a licensed family child care center located in Milwaukee County, Wisconsin. Stephanie Burgess is the licensee (hereafter, petitioner).

2. On June 16, 2009, the Department issued a warning letter to the petitioner informing her that the Department had made multiple prior attempts to access her child care facility, and that she was in non-compliance with the Department's rules in not providing access to the facility in the past. See, Exhibit R-3, p.3.

3. On April 14, 2010, the Wisconsin Department of Children and Families issued a letter to the petitioner. That letter declared that the Department had determined that it was suspending WI Shares payments to the petitioner because it had found that it possessed reasonable suspicion that the petitioner had violated provisions of the WI Shares Program, to-wit, that the petitioner had: (a) failed to provide access to the day care facility during stated hours of operation; (b) prior licensing violations; and (c) failed to maintain and submit accurate attendance records as required by the Wisconsin Shares program.

4. The petitioner filed an appeal contesting this suspension determination with the Division of Hearings & Appeals on April 26, 2010, in DHA Case No. ML-10-0208.

5. On August 5, 2010, the Wisconsin Department of Children and Families issued another letter to the petitioner. This letter declared that the Department had determined that she had been overpaid $19,957.39 in Wisconsin Shares reimbursements for the period of July 5, 2009 – December 11, 2009, because she had billed the program for amounts in excess of the hours of actual attendance by children in care based upon her billing claims and attendance records.

6. The petitioner filed an appeal contesting this overpayment determination with the Division of Hearings & Appeals on September 7, 2010, in DHA Case No. ML-10-0377.

7. On December 23, 2010, the Department issued a new letter to the petitioner informing her that it had reviewed her case and the overpayment alleged, and amended the overpayment, finding that she was overpaid a reduced amount of $17,577.39 for the period of July 5, 2009 – December 12, 2009, rather than the previously alleged $19,957.39.

8. The Department's agents were unable to make contact with the provider on-site, and/or gain access to the licensed premises, on random visits on April 6, 2006, April 11, 2006, twice on February 20, 2008, April 1, 2008, April 9, 2008, November 20, 2008, November 24, 2008, April 13, 2009, June 8, 2009, July 1, 2009 (at 3:15 P.M.), and December 17, 2009. See, Exhibits R-3 & R-6. The Department's investigator did gain access on October 26, 2009 at 4:00 P.M., and found no children present on the premises.

9. During the week that included October 26, 2009, the petitioner claimed payment from the Department for the care of 6 children that should have been present at the time of the visit by the investigator described in Finding of Fact #7; but none were present at that time.

10. After the no access visit on July 1, 2009, the petitioner claimed payment for six children that were authorized to be in care at the time of the visit, but were not at the child care site at the time of the attempted visit of July 1, 2009.

11. The petitioner claimed payments, and received payment, from the WI Shares program for $17,577.39 in excess of the amount to which she was entitled for valid authorized care within the limits of her license to care for up to 8 children at one time. See, Exhibits R-2 & R-14.

## DISCUSSION

**(1) Whether the Department correctly suspended the petitioner's WI Shares payments due to a reasonable suspicion that program violations had occurred.**

2

The Department initiated its action by relying upon the following statutory provision at Wis. Stat. §49.155(7)(a)(4).

(7) REFUSAL TO PAY CHILD CARE PROVIDERS. (a) The department or the county department ... may refuse to pay a child care provider for child care provided under this section if any of the following applies to the child care provider, employee or person living on the premises where child care is provided:

(1) The person has been convicted of a felony or misdemeanor that the department or county department determines substantially relates to the care of children or the operation of a business.

(2) The person is the subject of a pending criminal charge that the department or county department determines substantially relates to the care of children.

(3) The person has been determined under s. 48.981 to have abused or neglected a child.

(4) **The department or county department reasonably suspects that the person has violated any provision under the program under this section or any rule promulgated under this section.**

This statute provides a mechanism for the Department to discontinue sending WI Shares program funds to child care providers if the Department has a reasonable suspicion that the provider is violating provisions of the program.

Reasonable suspicion has been described as "something more than an inchoate and unparticularized suspicion or hunch." As a level of suspicion it is considerably less than proof of wrongdoing by a preponderance of evidence and "obviously less demanding than probable cause." To be "reasonable," the standard requires that the suspicion be supported by articulable facts that wrongdoing "may be afoot," even if probable cause is lacking. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). If there is a particularized and objective basis for suspecting violations, then there is a reasonable suspicion. *See Ornelas v. United States*, 517 U.S. 690 695 (1996), citing *United States v. Cortez*, 449 U.S. 411, 417-18 (1981).

If the Department is able to articulate facts to show there is an objective basis for suspecting that the child care provider has been, or is, violating any provision of the Wisconsin Shares program, then it is appropriate, under Wis. Stat. § 49.155(7)(d) (as created by 2009 Act 28, effective July 1, 2009) to refuse to pay the provider. Payments may be suspended while that suspicion is being investigated. Should the suspicion prove to be unwarranted, then payments should be resumed. Should the suspicions be confirmed, then further actions—such as recouping overpayments; license suspension; and in some cases, referral for criminal investigation—may be pursued.

The Department's rules for the administration of family child care centers require the Department to make on-site inspections to monitor the provision of authorized services. Wis. Admin. Code §DCF 201.04(6)(e). The licensee is required to provide unrestricted access to the Department to visit and inspect the child care premises at any time during licensed hours of operation. Wis. Admin. Code §DCF 250.12(2). The child care licensee is required to maintain current, accurate written record of the daily attendance on a form prescribed by the Department that includes the actual time of arrival and departure for each child for as long as the child is enrolled. Wis. Admin. Code §DCF 250.04(6)(b).

The Department's witnesses and its exhibits established clearly that the petitioner has violated the WI Shares provisions requiring accurate attendance record keeping and reporting requirements; and that she

3

repeatedly failed to provide access to the child care facility on at least twelve recorded occasions between April 5, 2006 – December 17, 2009, and allowed access on only one occasion, when no children were found present. See, Finding of Fact #8, above. See, Exhibits R-17, R-10, R-11 & R-14; and see, Exhibits R-3 & R-6.

During the hearing, and in her pleadings, the petitioner essentially admitted that there had been some errors or inaccuracies in her attendance records and billings, and that she recognized the need to focus more on her attendance records and claims, but such inaccuracies were simple errors and should not result in petitioner's suspension from the WI Shares Program because she is otherwise a good child care provider. In addition, she did not allege, or otherwise provide any specific examples of how the Department was incorrect in its determinations that petitioner maintained and submitted inaccurate claims for payment. As a licensed child care provider, petitioner had an obligation to maintain accurate records of the children in her care, and submit accurate billing statements to the WI Shares Program for payment.

She also argued unconvincingly that while there may have been occasions when the Department's agents came to her facility to gain entrance, if she was not there it was because she was either providing transport services to children in care or because she frequently took children in care on outings in the community.

However, it stretches credulity to the breaking point, and beyond, to argue from this fact pattern that on 12 of 13 unannounced attempts by the Department to visit and inspect the premises over the past 5 years, the Department's agency by happenstance visited the site on days when she was on field trips or engaged in child transport. Likewise, even after it issued a warning letter about the lack of anyone at the child care during attempted visits, the Department's representatives still could not get access despite two more visits, until an investigator came to the site in October, 2009, i.e., 4 months after the warning letter.

The Department established that petitioner had submitted inaccurate claims for payment on many, many occasions in the period of July – December, 2009. It has also established that she did not provided access to the child care facility during hours of operation on at least 12 straight occasions. Both were rule violations.

In light of this evidence and the petitioner's admissions, I find there is no doubt that petitioner violated the WI Shares programs. In the present case, there is no question that the Department established far, far more than that it possessed a reasonable suspicion that the provider was violating provisions of the program. Therefore, the Department had a reasonable suspicion and was justified in refusing WI Shares payments to petitioner.

**(2) Whether the Department correctly determined that the petitioner had been overpaid $17,577.39 in WI Shares reimbursements in the period of July 5 – December 12, 2009, due to overbilling.**

In an administrative hearing concerning the correctness of the county agency action to determine that the instant provider was overpaid Child Care Benefits, the burden of persuasion (also called the "burden of going forward") that the overpayment occurred rests on the Department. If DCF presents sufficient evidence to establish a *prima facie* case of overpayment, the burden of producing evidence to counter DCF's evidence shifts to petitioner. The petitioner bears the ultimate burden of persuasion, i.e., the burden of proof. See, In re Olsten Health Services, DHA Case No. 98-DHA-065 (DHFS April 6, 2000) (Final Interim Decision by the Secretary). See also, Kenneth Culp Davis, Administrative Law Treatise, Vol. 3 § 16.9 (2nd Ed. 1980).

Here, the Department is seeking to recover $17,577.39 in overpaid Wisconsin Shares reimbursements.

The Child Day Manual, Chapter 2, § 2.3.2, states as follows:

### 2.3.2 Provider Overpayments

4

Agencies shall take all reasonable steps necessary to recoup or recover, from the provider, any overpayments made for child care services.

Recover an overpayment from a provider when they have received payment for care they did not provide or when operating outside of regulation:

1. The provider recorded incorrect hours of attendance which caused an overpayment. This applies to both enrollment and attendance based authorizations.

1. Generally when the worker entered incorrect authorization or provider information or failed to act on reported information resulting in an authorization related overpayment.

2. The provider did not report to the local agency when a child stopped attending day care.

3. The provider was not properly regulated during the hours for which attendance was paid (e.g. license was suspended, had more children in care than the regulation allowed, care occurred at a location other than the authorized location, etc.).

Manual, Chapter 2, § 2.3.2.

The Department is required to take all reasonable steps necessary to recoup or recover WI Shares overpayments made to a child care provider. See, Wis. Admin. Code §DCF 201.04(5)(b).

As to the overpayment, the Department presented the testimony of Erik Hayko of its fraud detection unit. Hayko testified that the Department utilizes a statistical profile to determine when to audit a provider in detail. In this case, at a minimum, the multiple failures to access the child care operation site constituted one of the "red flagged" profiles triggering a full audit. In addition, Hayko testified, other red flagged statistical profiles were also triggered, including a statistical analysis that indicated that the child care operation was caring for children of employees for at least 40% of children in care; and concerns about overbilling because the Department could not get access to obtain current attendance records. Hayko presented Exhibits R-17 (amended audit report) and R-14 (original audit report) which detailed the computations performed to determine that multiple overpayments had occurred in the period in question; and Exhibits R-10 and R-11, the petitioner's actual daily attendance records on the Department's prescribed forms (R-10) and the compilation of the hours attended for payment as submitted to the Department (R-11). Finally, Hayko testified that the petitioner was overpaid for two reasons:(a) making claims for hours in excess of actual attendance hour (R-11 vs. R-10), and for any periods where claims for payment revealed that more children were in care than the operation was licensed to have in care, i.e., eight (8).

To this evidence, the petitioner admitted as above, that she could have been more focused on her attendance records and claims records, but that she is a quality caregiver and did provide cares to many children. She generally denied that she operated with more than 8 children present at any time, but she provided no specific evidence on this point or any records in support of this assertion. She also argued that some of these children may have been "in transport", but could not demonstrate that at such times she had 8 or less in care. She also argued, again generally, that the rules and requirements of bookkeeping for WI Shares operation should have been better explained to child care operators, and the Department should provide better training.

To this over-capacity oriented argument, Hayko replied that the analysis of the out of compliance with license limitations component of the overpayment found was based on how the petitioner completed the attendance records and claims for payment, which demonstrated that over-capacity care had occurred.

5

The petitioner was in fact operating contrary to regulation. Maintaining precise records of when children arrive and depart at the child care is essential for accountability and child safety. The attendance records in this case fail to provide an accurate written record of care provided at the operation. The petitioner provided a copy of her resumé, which indicates that she has a bachelor's degree and a master's degree in human services; has been a Head Start teacher; and has been a parent educator and caseworker for at least three employers (including Head Start) in the past. See, Exhibit P-2, attachment. She appeared to be a competent, intelligent, and composed witness. I have no reason to doubt that she is capable of providing care to children. But the operation of a child care facility that receives WI Shares reimbursement for cares provided requires more that simply adequate, good, or even great care. It also requires the sufficient business management acumen to accurately record attendance hours, the number of children in care at any given time, and comply with the limitations of the license, as well as all statutes, rules and policies of the WI Shares Program. The Program *must* receive claims for payment that comport with the actual allowable care provided as documented on the Department's attendance forms. Period.

I have reviewed the audit report, R-17, and I can find only one very, very small computational error. The total of the 23 separate overpayment tests performed is 5¢ *less* than the total the agency used in the Notice of December 23, 2010, i.e., it is $17,577.3<u>4</u>, not $17,577.3<u>9</u>. See, Exhibit R-17. Nor has the petitioner provided any specific evidence of any specific errors in the overpayment computations. Likewise, I am satisfied that the over-capacity portions of the overpayment were correctly computed, and no date specific evidence has been provided to the contrary. It has been well-established that operation in excess of capacity means that the cares provided to all children at the time of over-capacity is part of the overpayment. See, for example, Final Decision in ML-09-0503 (Wis. Div. Hearings Apps. April 26, 2010)(DCF-Secretary); and see, Decision in ML-08-0321 (Wis. Div. Hearings Apps. March 17, 2009) (DCF); and Decision in ML-09-0032 (Wis. Div. Hearings Apps. July 27, 2009).

Operating above capacity creates quality of care and safety issues for all of the children at a child care center. The child care operation was not lawfully providing care for *any* child when it operated outside the scope of its license and therefore it is not entitled to be paid for any of the care. Because *none* of the children in the child care received care consistent with licensing requirements, the child care should not have submitted payment for that care. The Department is acting within its authority to recover the overpayment for times when the operation had more than the licensed number of children in care, as well as when hours claimed exceed actual hours attended. Every licensed child care in Wisconsin is given a copy of the pertinent administrative rules. When an operator applies for or renews a license, the Department asks the applicant to sign a form that affirms that he or she knows the applicable rules. (See Exhibit R-1.)

The Department's overpayment determination is also affirmed, albeit with the modification that the overpayment amount is to be changed of record to $17,577.34.

## CONCLUSIONS OF LAW

1) That the Department correctly suspended payment of WI Shares reimbursements to the petitioner on April 26, 2010, because of a reasonable suspicion that she had violated WI Shares Program rules.

2) That the Department correctly determined, upon amendment on December 23, 2010, that the petitioner received an overpayment of Wisconsin Shares funds in the period of July 5 – December 12, 2009; but it incorrectly totaled the overpayment as $17,577.39, when it is actually $17,577.34; the matter will be remanded to correct the amount of record, only.

**NOW, THEREFORE, it is**          <u>ORDERED</u>

That, if and only if, this Proposed Decision is adopted in a Final Decision by the Secretary of the Department of Children and Families, then the matter is remanded to the Department for the sole purpose

of amending the WI Shares overpayment of record against the petitioner to a total of $17,577.34; and in all other respects the petitions for review in DHA Case Nos. ML-10-0208 and ML-10-0377 are dismissed. These actions shall be completed within 10 days of the Secretary's Final Decision adopting this Proposed Decision, if so adopted.

## NOTICE TO RECIPIENTS OF THIS DECISION:

This is a Proposed Decision of the Division of Hearings and Appeals. IT IS NOT A FINAL DECISION AND SHOULD NOT BE IMPLEMENTED AS SUCH.

If you wish to comment or object to this Proposed Decision, you may do so in writing. It is requested that you briefly state the reasons and authorities for each objection together with any argument you would like to make. Send your comments and objections to the Division of Hearings and Appeals, P.O. Box 7875, Madison, WI 53707-7875. Send a copy to the other parties named in the original decision as "PARTIES IN INTEREST."

All comments and objections must be received no later than 15 days after the date of this decision. Following completion of the 15-day comment period, the entire hearing record together with the Proposed Decision and the parties' objections and argument will be referred to the Secretary of the Department of Children and Families for final decision-making.

The process relating to Proposed Decision is described in Wis. Stat. § 227.46(2).

Given under my hand at the City of
Madison, Wisconsin, this _6th_ day
of April, 2011.

Kenneth D. Duren,
Administrative Law Judge
Division of Hearings and Appeals